Wo Kee & Co., Kwong Cheung Lung & Co. *v.* United States
(No. 4309) [1]

---

[1] C. A. D. 154.

United States Court of Customs and Patent Appeals, January 6, 1941.

*Lawrence A. Harper* for appellants.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel G. McGrath,* special attorney, of counsel), for the United States.

[Oral argument December 12, 1940, by Mr. Harper and Mr. McGrath]

Before, GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (First Division) overruling two protests of appellants against the classification by the collector at the port of San Francisco, Calif.,

of certain merchandise described on the invoices as "Oyster sauce" and described by the appraiser as "Oysters or oyster juice packed in air-tight containers." The merchandise was assessed with duty under the provisions of paragraph 721 (e) of the Tariff Act of 1930 at 8 cents per pound. Appellants claimed the merchandise to be free of duty under the provisions of paragraph 1761 of the same act.

Other claims were made in the protests with respect to such merchandise, but none of them were pressed before the Customs Court and are not mentioned in appellants' assignment of errors.

The involved paragraphs of the tariff act read as follows:

PAR. 721. (e) Oysters, oyster juice, or either in combination with other substances, packed in air-tight containers, 8 cents per pound, including weight of immediate container.

PAR. 1761. Shrimps, lobsters, and other shellfish, fresh or frozen (whether or not packed in ice), or prepared or preserved in any manner (including pastes and sauces), and not specially provided for.

Before the Customs Court the protests were consolidated for purposes of trial.

Identical merchandise was before us in the case of *Shun Yuen Hing & Co. et al.* v. *United States*, 23 C. C. P. A. (Customs) 316, T. D. 48178. In that case, as here, the merchandise was classified under the provision of paragraph 721 (e), and, as here, claimed to be free of duty under paragraph 1761. The record in that case was, in the Customs Court, incorporated in the instant case.

The additional record made in the instant case consists of the testimony of seven witnesses and certain exhibits.

In the case of *Shun Yuen Hing & Co. et al.* v. *United States, supra*, hereinafter referred to as the *Shun Yuen Hing* case, we affirmed the judgment of the Customs Court overruling the protest, and in our opinion stated:

It appears from the desposition of the witness Chin Koon Hor that merchandise like that here involved is prepared in the following manner by the use of approximately 133⅓ pounds of oysters, 10⅔ pounds of salt, and 6½ gallons of water:

Oysters, salt, and water are used only. First the oysters are removed from the shell, then put in a pan. Salt and water are added. The mixture is *steamed* for three hours. The oysters are then removed. The water left in the pan is placed in earthenware jars where it is kept for two months. After two months the skim is removed and the remainder, which is the oyster sauce, is packed in bottles or cans. [Italics ours.]

\*  \*  \*  \*  \*  \*  \*

According to the testimony in this case, oysters were included in the mixture during the steaming process, but were removed after the steaming process. Whether the steaming process dissolved a portion of the oysters, does not appear, and, so far as we can ascertain from the record, the involved merchandise is nothing more than oyster juice in combination with salt and water, steamed. Accordingly, the involved merchandise is not oysters, prepared or preserved in the form of a sauce or otherwise, and, therefore, is dutiable under the provisions of paragraph 721 (e), as held by the collector and the trial court. See *Alexander &*

*Baldwin, Ltd.* v. *United States, supra* [21 C. C. P. A. (Customs) 558, T. D. 46988]; *Nootka Packing Co. et al* v. *United States, supra* [12 C. C. P. A. (Customs) 464, T. D. 47464].

In so holding, it should be understood that we are limiting our decision in this case to the record before us and the precise issues involved.

The additional testimony in the instant case with respect to the method of preparing the involved merchandise is substantially the same as the testimony in the incorporated case, quoted in our opinion in that case.

It is appellants' chief contention that in the case at bar the additional testimony herein distinguishes this case from the *Shun Yuen Hing* case, and that our decision in that case should not control our decision here.

The testimony thus relied upon is that of one C. Gurchot, a biochemist and pharmacologist, who made a microscopic examination of a sample of the merchandise here involved. This witness testified in part as follows:

Q. Mr. Gurchot, did you receive some bottles from the court, marked Exhibits 1 and 2?—A. I did.

Q. Will you please tell the court what you did with those exhibits.—A. I took those exhibits to my laboratory and I opened the bottles. Upon opening the bottles, they gave forth a very strong odor of shellfish. Since I was familiar with the method of manufacture of this exhibit, as included in the record, I set about to look for evidence characteristic of shellfish. I therefore submitted the different samples to an examination with the microscope, and in so doing I found that they all contained cellulose structures, some of which are characteristic of shellfish. The cellulose structures which I found are roughly indicated on the paper which I have here. I found, for instance, muscle bundles, which come from the body of the shellfish itself.

* * * Then I found some muscle bundles, to the extent of about 2 per cent of all the cells I could see, and then some epithelial layers, which came from a structure of shellfish which is called the mantle, about 1 per cent of the entire cell mass. Then some connective tissue cells, about 10 per cent of the entire cell mass, which cells are to be found pretty nearly all over the shellfish organism. Then I also found some epithelial tissue coming from the gills of the shellfish, also present in single layers and having a peculiar appearance of their own. These were also present in an amount of about 2 per cent. In addition to that, I found some blood vessels, very small tubes which could be identified as such, about 1 per cent of the entire cell mass; also a great deal of masses of epithelial tissue characteristic of glands, which are found in different organisms. There was about 50 per cent of those. In addition to that, there was an unspecified amount of cellular debris of all sorts.

He further testified that his examination disclosed that the cellulose structure found by him came from shellfish, but he was unable to determine any particular variety of shellfish in which they originated.

The witness further testified that he also made a microscopic examination of oyster juice. Upon this point he testified as follows:

Q. Did you endeavor to ascertain whether the present merchandise was prepared from oyster juice?—A. I did.

Q. Will you please explain how you went about that analysis.—A. I secured a sample of fresh oysters, which was delivered to me in a glass jar. From this sample I removed portions of the juice or liquid surrounding these oysters, and I examined this liquid under the microscope in the same way as I had done the exhibit, or the exhibits.

\* \* \* \* \* \* \*

\* \* \* Upon examining this material, then, under the microscope, I did not find any cellular structures in it at all. The material was clear, colorless, had the odor of the——

### By Judge Brown:

Q. You are talking about the pure oyster juice you examined, to compare with this?—A. Yes.

Q. Found no cellular structure?—A. No cellular constituents at all, just a clear, colorless fluid, which smelled like the oysters from which it was derived, and was slightly more viscous than water, but that was all; had no cellular constituents in it.

With respect to the testimony of this witness the trial court in its decision herein stated:

\* \* \* In our opinion, after careful consideration, we think that this testimony does not substantially change either the factual or legal situation. We feel that a sauce so manufactured, even where the integuments, etc., are not distinguishable from those of other shellfish, does not fall outside of paragraph 721 (e). It is a very specific provision relating to oysters and oyster juice and their combinations, much more specific than shellfish sauce is.

We think that Congress intended to include articles like that before us, even if the integuments, etc., cannot be certainly distinguished as those of the oyster.

If we sustained the claim that this comparatively simple process of preparation removed the resulting article beyond the stage of "oysters or oyster juice or either in combination with other substances" we would create a distinction too fine to have been in the mind of Congress in framing this paragraph. The claimed construction would take out of paragraph 721 (e) articles very similar in kind to those it was admittedly designed to cover. The process described in the incorporated record produces a product, which, from every practical point of view, is very similar to and not far removed from oyster juice itself, which is plainly within the paragraph. Nor do we think that the testimony taken in New York on transfer there tending to show an administrative practice to describe it as "oyster sauce" or to sell it commercially as "oyster sauce" would lead to a different result in the form the issue arises here under the 1930 act. The alternative claims under other paragraphs not being pressed are also overruled.

We are in accord with the view of the trial court that the additional testimony in the case at bar does not substantially change either the factual or legal situation existing in the *Shun Yuen Hing* case.

The fact that a microscopic examination discloses some cellular structure in the involved merchandise, which structure is not visible to the naked eye, does not convince us that the merchandise is not "oyster juice, \* \* \* in combination with other substances." We do not think its identity as oyster juice was lost because of its being

extracted from the oysters through a boiling or steaming process. It is a matter of common knowledge that in extracting or expressing juice from lemons, oranges, and other fruits, some of the fiber or cellular structure may be included in the juice extracted; but surely the juice would not lose its character of juice because of that fact.

In the incorporated case one of the witnesses, Tong Hon, testified that he was familiar with the manufacture of a product which he termed "oyster sauce" and further stated as follows:

Q. How was it made?—A. This is made from oysters cooked. This is from the juice, and they have the oyster juice recooked again to make this. I have worked in a place where they make oyster sauce.

When asked if anything was added to the oysters when they made this product, he replied "Nothing else." In this answer the witness was mistaken, so far as the merchandise there involved was concerned, for it was clearly established that salt was added.

Appellants contend that the testimony of Dr. Gurchot establishes that the involved merchandise is clearly distinguishable from oyster juice, in that his testimony shows that he made a similar microscopic examination of oyster juice and found no cellular structure therein.

We have hereinbefore quoted Dr. Gurchot's testimony upon this point. It will be observed that he testified that he secured a sample of fresh oysters and that the juice he examined consisted of "portions of the juice or liquid surrounding these oysters." Of course the oysters themselves contained juice, and if the witness had extracted or expressed such juice from the oysters a different result might have been observed by him from his microscopic examination.

A chemical analysis of a sample of the involved merchandise was introduced in evidence, and in the incorporated case chemical analyses of samples of the merchandise there involved were also introduced in evidence.

With respect to these analyses appellants' brief states as follows:

\* \* \* On the dry weight basis of the chemical analysis, the oysters comprised 24.02 per cent of the entire product but they had been so broken down as not to be distinguishable even by microscopic examination as anything but the product of a shellfish.

This statement cannot be assented to, insofar as it implies that the oysters, as distinguished from the constituents of oyster juice, comprised 24.02 per centum of the entire product. Whether this 24.02 per centum consists of oysters or oyster juice constituents does not appear anywhere in the record, other than in the testimony of Dr. Gurchot, and he does not testify to any percentage of cellulose structure as compared with the entire product. He testified only to percentages of different kinds of cellulose tissue, as compared to the entire cellulose structure found by him to exist in the samples examined.

Much of the testimony submitted by appellants was directed to the question of the use of merchandise such as here involved, and it was sought to establish that the involved merchandise is a shellfish sauce, and not oyster juice.

However, appellants make no claim of commercial designation of the merchandise.

As hereinbefore indicated, we are of the opinion that appellants have not established that the involved merchandise is not oyster juice; and it has not been established that the use of the merchandise differs from the use of oyster juice. For aught that appears from the record, all oyster juice may be used in the same way, and for the same purposes, that the involved merchandise is used.

Moreover, it is plain that Congress differentiated between oysters and oyster juice, for each is given an *eo nomine* designation in paragraph 721 (e). Therefore, even if we regard the involved merchandise as oyster juice prepared, it could not be regarded as oysters prepared in the form of sauce or otherwise.

Accordingly, as we held in the *Shun Yuen Hing* case, we must here hold that it is not established that the involved merchandise is shellfish (oysters) prepared or preserved in the form of a sauce or otherwise, and that the presumption that the same is oyster juice, as classified by the collector, has not been overcome by appellants.

Appellants invoke the legislative history of paragraph 721 (e) in support of their contentions. We find nothing in either that paragraph or paragraph 1761 to warrant a resort to their legislative history, so far as the question before us is concerned.

It appears that one of the protests (No. 609076) involved, in addition to the merchandise hereinbefore discussed, certain "Dried Duck in Oil." With respect to this merchandise the following stipulation was entered into upon the trial:

Mr. CARPENETI. In Protest 609076, No. 804 and 844, on the docket, it is hereby stipulated by and between Counsel for the respective parties that the ducks in oil covered by the Protest 609076–G/48065, and represented by items marked "A" on the invoice, and checked by the Examiner, J. A. Witty, consist of duck packed in peanut oil, in sealed tins, and that the merchandise is in all material respects the same as the merchandise involved in the case of Wa Chong Co. vs. The United States, T. D. 45695. That the weight of the oil is 541 pounds, and that the entire record of the aforesaid case be incorporated and become a part of the record at the hearing of Protest 609076.

Mr. DONOHUE. I have consulted the Examiner, and agree to that stipulation.

Judge SULLIVAN. Where does that leave the case?

Mr. CARPENETI. The case is left with the request for a continuance of six months, or it might be better to continue it to the February, 1937 docket. Government Counsel would rather have it continued six months.

Mr. WEIL. So the court isn't confused, this is the oyster sauce case. There was some merchandise consisting of duck in oil. They have stipulated the duck in oil, and there has been a disposition made of the oyster sauce case.

Judge SULLIVAN. No, there has been no record of that.

Mr. WEIL. It is all disposed of now.

Judge SULLIVAN. It is not disposed of. The record made by the court, which is the record as long as he has control of the Court, is that the Plaintiff be given to the 30th of September to file interrogatories and the Government given 15 days to file cross-interrogatories. I will not make it any time. These cases are now off the docket.

This is the only reference to this matter that we can find in the record. It is not mentioned in the decision of the trial court, nor was the record stipulated to be incorporated transmitted to this court.

Apparently the failure specifically to pass upon the "duck" portion of said protest arose through inadvertence.

Although this subject is not referred to in the briefs of the parties, appellants' counsel in oral argument called our attention to the matter, stating that failure to pass upon this question was clearly an oversight, and asked us either to pass upon it directly or remand the case to the Customs Court to enable that court to have the opportunity to pass upon it.

Appellants contend that their assignment of error 13, alleging error by the Customs Court in holding that the instant merchandise was similar to oyster juice, is sufficient to enable them to raise the question with respect to the ducks.

We are of the opinion that this assignment is not sufficient to raise the question of error in the classification of the ducks. It is clear to us that in filing his assignment of errors appellants' counsel had no thought of raising this question. We come to this conclusion from the fact that the incorporated record relating to the ducks was not transmitted to this court, and from the fact that this question is not referred to in appellants' brief.

Although the judgment appealed from is broader than the decision upon which it is based, the rule is that in such cases the judgment controls and must be considered as determining the rights of the parties. *Roessler & Hasslacher Chemical Co.* v. *United States*, 13 Ct. Cust. Appls. 451, T. D. 41347.

Appellants should have applied to the Customs Court for a rehearing upon this point, which, if seasonably applied for, might have been granted. Not having done so, and not having assigned error to bring this question before us, we would not be warranted in remanding the case for a determination of the claim of the protest respecting the ducks.

For the reasons hereinbefore stated, the judgment appealed from is *affirmed.*